UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LATISHA ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-00450-AGF |
| | ) | |
| MERCY HOSPITAL EAST | ) | |
| COMMUNITIES d/b/a MERCY | ) | |
| HOSPITAL ST. LOUIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Mercy Hospital East Communities d/b/a Mercy Hospital St. Louis's motion for summary judgment. Plaintiff Latisha Allen, who is African American, alleges that Defendant terminated her based on her race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. For the reasons set forth below, Defendant's motion will be granted.

## BACKGROUND

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, for purposes of the summary judgment motion, the record establishes the following. Plaintiff was employed by Defendant as a surgical technician from June 22, 2015, until she was terminated on June 16, 2017. During her employment, Plaintiff reviewed and acknowledged Defendant's employment policies, including its anti-harassment policy, recording and social media policies prohibiting recording any images

of patients or patient specimens, time and attendance policy, code of conduct, and corrective action policy, which includes progressive discipline. The usual progression of discipline included verbal coaching or counseling, followed by a verbal warning, followed by a written warning, then a final warning, and then termination.

On February 22, 2016, Plaintiff received verbal counseling for a specimen error from Laura Truskowski, her supervisor. On March 7, 2016, Plaintiff received verbal counseling for attendance issues. She again received verbal coaching for sleeping at work on April 25, 2016, although Plaintiff denies she was sleeping.

On August 4, 2016, Plaintiff received an annual employee evaluation rating her overall performance as 4.54 out of 5. On March 7, 2017, Plaintiff received a corrective action form signed by Truskowski and Truskowski's supervisor, Antoinette "Toni" Kanne, for taking a personal call in the operating room suite, for not being in the operating room to which she was assigned during a procedure, and for being late to her shift. Plaintiff denied and continues to deny the allegations, and she did not sign the written warning.

On April 10, 2017, Plaintiff's co-workers reported to Truskowski that Plaintiff was not present in her assigned area, delinquent in returning from her breaks, and misunderstanding job responsibilities. On April 13, 2017, Plaintiff received a corrective action form issuing a final warning from Kanne after she had further issues with

attendance.[1] Plaintiff signed the corrective action form documenting Plaintiff's attendance issues, attesting to and understanding its contents and consequences.

On June 9, 2017, an evening shift supervisor reported that Plaintiff failed to return to her assigned area in the operating room following her lunch break. Truskowski discussed the issue with Plaintiff and reminded her that she was on final warning status. Later that day, a co-worker reported that Plaintiff was being rude to a new orientee, creating an uncomfortable environment. Plaintiff denies this claim.

On June 12, 2017, Truskowski sought guidance from Kanne regarding how to handle Plaintiff's behavior. Kanne informed Truskowski, the executive director of surgical services, and a senior human resources manager that Plaintiff was "perilously close to termination" due to her continued performance and behavioral issues.

On June 13, 2017, Plaintiff took a photograph of a patient specimen on her personal cell phone and showed it to her co-workers. The specimen had been removed from a patient during a pediatric surgery. It is undisputed that Plaintiff did not have consent or authorization to take the photograph, and her action violated Defendant's policies. Plaintiff in her deposition admitted that she was not aware of any other surgical technologist or nurses taking photographs of patient specimens. Plaintiff contends that she deleted the photo and did not post it to social media.

On June 14, 2017, Plaintiff called a surgeon "retarded" during a procedure in an operating room. Plaintiff does not dispute the incident but claims that the comment was

---

[1]     Kanne was acting as Plaintiff's direct supervisor while Truskowski was on maternity leave from March 25, 2017 to June 5, 2017, and she continued in that role upon Truskowski's return, acting as co-supervisor.

made "in immediate response to a comment [the surgeon] made to a female co-worker." Plaintiff's Affidavit, ECF No. 62-2 at ¶ 7. Specifically, the surgeon asked whether Plaintiff's co-worker was "wearing panties," and Plaintiff replied, "are you retarded?". *Id.* Truskowski was informed about Plaintiff's behavior that day. Defendant presented affidavits from its supervisory and human resources employees stating that calling anyone "retarded" at work is unprofessional, violates Defendant's policies, and warrants corrective action.

Based upon Plaintiff's actions of taking a photograph of a patient specimen and name-calling, Plaintiff's employment was terminated on June 16, 2017. Because Plaintiff was on final warning status at the time of both events, she was terminated for exceeding the disciplinary threshold.

Plaintiff believes that her termination was racially-motivated. In support, she submits photographs taken by her Caucasian co-workers and supervisors in patient areas and posted to social media. Plaintiff contends that these photographs violate Defendant's social media policy, yet none of the employees was disciplined for their violations. Plaintiff admits, however, that none of the photographs contain images of patients or patient specimens. She also admits that she does not know the disciplinary history of these employees.

Defendant argues that violations of Defendant's policies or other unprofessional, inappropriate, or problematic behavior while an employee is on final warning status will usually result in that employee's termination. It submitted evidence that, since 2015, Defendant has discharged seven surgical technologists for the same reason as Plaintiff,

4

i.e. reaching the disciplinary threshold. Of the seven discharged, five were Caucasian. Defendant also introduced evidence that Plaintiff's supervisor had recommended and administered the termination of employment for four surgical technologists, two of which were Caucasian and two of which were African American.

Following her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on July 3, 2017, and with the Missouri Commission on Human Rights on February 26, 2018, alleging race discrimination. Plaintiff received a right-to-sue letter on March 13, 2018.

On March 22, 2018, Plaintiff filed this pro se employment discrimination lawsuit, asserting violations of Title VII. On October 2, 2018, the Court appointed David Butsch as limited scope ADR counsel, and the parties proceeded with mediation on February 22, 2019. Mediation was unsuccessful.

On March 12, 2019, limited scope counsel entered his full appearance on Plaintiff's behalf and filed a first amended complaint alleging that the stated reasons for Plaintiff's termination were pretextual and race was a motivating factor in Plaintiff's termination. Plaintiff alleges that she was treated differently from non-African-American employees who were not terminated for similar claimed violations of Defendant's policies.

## **ARGUMENTS OF THE PARTIES**

Defendant argues that summary judgment is warranted for several reasons. First, Defendant argues that Plaintiff cannot prove a prima facie claim of discrimination under Title VII as a matter of law because the undisputed evidence demonstrates that Plaintiff

was not meeting Defendant's legitimate job expectations and because Plaintiff has not shown that she was treated differently than similarly situated employees outside her protected class. Defendant further argues that, even if Plaintiff could establish a prima facie claim of discrimination, Defendant had legitimate, non-discriminatory reasons to discharge Plaintiff, based on Plaintiff's conduct, and that Plaintiff has not established that Defendant's reasons were pretext for discrimination. Lastly, Defendant maintains that Plaintiff has not established that she was treated differently than similarly situated employees outside her protected class because Plaintiff's violations of policy were not similar to those allegedly perpetrated by her co-workers. Further, Defendant maintains that none of the other employees identified by Plaintiff were on final warning status, and thus are largely distinguishable.

Plaintiff responds that summary judgment is inappropriate because there are genuine issues of material fact as to whether Defendant discriminated against Plaintiff on the basis of her race. Plaintiff argues that she has demonstrated a prima facie claim for discrimination because she was meeting her employer's expectations and similarly situated Caucasian employees were not terminated for engaging in similar conduct. Plaintiff also argues that Defendant's proffered reasons for terminating her are pretext for discrimination because Defendant was applying its policies selectively based on race.

## **DISCUSSION**

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802

F.3d 933, 937 (8th Cir. 2015). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan & Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted).

To survive a motion for summary judgment on a Title VII disparate treatment claim, a plaintiff must show either direct evidence of discrimination or create an inference of discrimination under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973). *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014). "Direct evidence of discrimination requires a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

Where there is an absence of direct evidence, the *McDonnell Douglas* framework applies, which requires a plaintiff to make a prima facie case of discrimination or retaliation. *Id.* To establish a prima facie case of discrimination, Plaintiff must show: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009).

"If a plaintiff satisfies this burden, the defendant then has the burden of showing a legitimate, non-discriminatory reason for the challenged action." *Shirrell*, 793 F.3d at 887. "If the defendant offers such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext. *Id.* "The showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee." *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 643 (8th Cir. 2008) (internal citation and quotation omitted). "A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Id.* (citation and quotation omitted).

Here, the Court concludes that there is no direct evidence of discrimination. The Court will therefore use the *McDonnell Douglas* framework. Plaintiff has presented little to support the second or fourth factors under *McDonnell Douglas*. But, assuming without deciding that Plaintiff could establish a prima facie claim of discrimination, Defendant has shown a legitimate, non-discriminatory reason for terminating Plaintiff's employment. Viewing the evidence and all reasonable inferences in the light most favorable to Plaintiff, it is undisputed that Plaintiff was on final warning status when she used inappropriate language when addressing a surgeon and took a photograph of a patient specimen, all in violation of Defendant's policies. She was terminated in accordance with Defendant's written policy regarding progressive discipline, which included various verbal and written warnings prior to termination. Thus, Defendant has articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *See Crumley v. S. Missouri Supported Living, Inc.*, No. 1:05CV00042LMB, 2008 WL

111280, at *4 (E.D. Mo. Jan. 8, 2008) (holding that an employer articulated a legitimate reason for terminating its employee after the employee used foul language and exhibited inappropriate conduct in the workplace).

Plaintiff has not presented evidence creating a triable controversy that the proffered reason is a pretext for discrimination. *Cage v. Multiband, Inc.*, No. 1:12CV87 SNLJ, 2015 WL 687120, at *7 (E.D. Mo. Feb. 18, 2015). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 955 (8th Cir.2012) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993)). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Gibson v. American Greeting Corp.*, 670 F.3d 844, 854 (8th Cir. 2012).

Here, Plaintiff contends that Defendant treated similarly-situated employees in a disparate manner. To establish that a defendant's reason is a pretext for unlawful discrimination based on disparate treatment, the plaintiff must pass the "rigorous test" to show that she and more favorably treated employees were "similarly situated in all relevant respects. *Evance v. Trumann Health Services, LLC,* 719 F.3d 673, 678 (8th Cir. 2013). "The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Bone*, 686 F.3d at 956.

9

Plaintiff failed to meet her burden. There is no evidence that the other purportedly similar employees were taking photographs while on final warning status or had a similar disciplinary history. *See Lindeman v. Saint Luke's Hosp. of Kansas City*, 899 F.3d 603, 606 (8th Cir. 2018) (holding that to be similarly situated, a plaintiff must show that he and the more leniently treated employees have comparable disciplinary histories). In addition, Plaintiff concedes that she is unaware of any other employees taking photographs of patient specimens or calling a surgeon "retarded." *See Bone*, 686 F.3d at 956 ("[T]o be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness.") (internal quotation marks omitted).

Although Plaintiff argues that other employees violated Defendant's policies by taking photographs in patient areas, it is undisputed that the photographs taken by these employees did not include any images of patients or patient specimens. Thus, Plaintiff's violation was not of comparable seriousness to the violations of other hospital employees. Likewise, although Plaintiff offers some evidence that the surgeon in question engaged in inappropriate banter with other employees, Plaintiff offers no evidence that other employees engaged in similar name-calling under similar circumstances and were not disciplined. Thus, Plaintiff has failed to show that she is similarly situated to the purported comparators.

For these reasons, Plaintiff's discrimination claims against Defendant fail as a matter of law.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant Mercy Hospital St. Louis's motion for summary judgment is **GRANTED**.  ECF No. 55.

**IT IS FURTHER ORDERED** that Defendant Mercy Hospital St. Louis's motion to vacate the trial setting is **DENIED AS MOOT**.  ECF No. 68.

A separate Judgment shall accompany this Memorandum and Order

                                                             */s/ Audrey G. Fleissig*
                                             AUDREY G. FLEISSIG
                                             UNITED STATES DISTRICT JUDGE

Dated this 1st day of October, 2019.